June Harris WILLIAMS, Individually and on behalf of all others similarly situated

v.

Ejner J. JOHNSON, Administrator, Motor Vehicle Administration, and Harry R. Hughes, Secretary, Department of Transportation.

Russell L. HOLDERBAUM

v.

MODERN BODY SHOP, INC., a Maryland Corporation.

Civ. Nos. 73–1100–K, 73–426–K.

United States District Court, D. Maryland.

Sept. 30, 1974.

Alan S. Davis and Janne Gallagher, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiff in 73–1100–K.

Charles W. Bell, Rockville, Md., for plaintiff in 73–426–K.

Francis B. Burch, Atty. Gen. of Md., J. Michael McWilliams, Asst. Atty. Gen., N. Barton Benson, Jr., Sp. Asst. Atty. Gen., and William M. Huddles, Asst. Atty. Gen., Baltimore, Md., for defendants in 73–1100–K.

George E. Krouse, Wheaton, Md., for defendant in 73–426–K.

FRANK A. KAUFMAN, District Judge.

In these two .cases, which have been argued and considered together but have not been formally consolidated under Federal Civil Rule 42(a), plaintiffs challenge the constitutionality of certain pro-

visions of 5B Md.Ann.Code art. 63, §§ 41–45 (1972 Replacement Vol. & 1973 Supp.), which authorize the assertion of a mechanics' lien upon a motor vehicle and the sale of such motor vehicle by the lien holder. In *Williams,* plaintiff and defendants have moved for summary judgment; in *Holderbaum,* defendant's motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure has been supported by affidavits and has thus been converted from a dismissal motion into a summary judgment motion. In both cases, the material and relevant facts are seemingly not in dispute.[1] *See* Federal Civil Rules 12 and 56.

## I. HOLDERBAUM

In November, 1970, Russell L. Holderbaum delivered his damaged 1967 Austin Healey automobile to Modern Body Shop, Inc., a Maryland corporation, and arranged for Modern to repair and paint his car. Modern alleged, and plaintiff has not disputed, that at that time a 9 by 12 inch sign "conspicuously displayed" at the entrance to its premises announced to customers that a $2 per day storage charge was to be assessed on any car not picked up 15 days after repair work was completed.

On or about December 12, 1971, Modern advised Holderbaum that all repairs had been completed, and that it wanted Holderbaum to take away his car since Modern's lot was full. Holderbaum did not, however, remove his vehicle. Between May 26, 1972 and May 30, 1972, Holderbaum's car was vandalized on Modern's premises; certain bucket seat bottoms, an arm rest, and a trunk lid, with a total value of approximately $250.00, were removed. Subsequent to such vandalism, Holderbaum made the final of a series of payments to Modern of a total repair bill in an amount in ex-

cess of $1200, withholding $78.21 because of his dissatisfaction with Modern's repair of the vandalism and because of alleged defects in the painting work Modern had performed. On February 6, 1973, Modern notified Holderbaum, by certified mail, of Modern's intention to sell Holderbaum's automobile at public auction on March 1, 1973, for the $78.21 repair balance plus accrued storage charges of $884.00 for the period from December 14, 1971 to February 28, 1973. Modern mailed that notice to the home address which Holderbaum had provided defendant at the time he first delivered his car for repairs. When that letter was returned marked "Moved, Not Forwardable", Modern sent to Holderbaum on February 8, 1973 a second certified letter, that one addressed to Holderbaum at his place of employment. Holderbaum, however, was at that time on sick leave and did not receive the notice of the imminent public auction until after the sale had been completed. That public sale was held on March 1, 1973. The parties agree that it was held in full compliance with state law and that in accordance therewith notice was published in an appropriate periodical, the Montgomery County Sentinel, commencing February 15, 1973 and ending February 22, 1973. In that undisputed factual context, Holderbaum, in this suit against Modern in which he seeks damages, asserts that Maryland's statutory procedures are constitutionally defective in that they fail to require that *actual* notice be provided before a sale is made and that Modern, acting under color of state law and in contravention of 42 U.S.C. § 1983, deprived him of his property without due process of law. Jurisdiction is claimed under 28 U.S.C. § 1343, the jurisdictional counterpart of 42 U.S.C. § 1983. Additionally, Holderbaum seeks, by way of pendent jurisdic-

---

1. The sole factual matters which are in dispute are (1) whether at the time Holderbaum left his vehicle with Modern, one of the doors to the vehicle could not be locked; (2) the exact dates on which Holderbaum made certain payments to Modern; and (3) whether at the time Modern notified Holderbaum

that his car was ready, Modern was aware that Holderbaum disagreed as to such readiness. None of those facts, or any others possibly in dispute between the parties in *Holderbaum,* require determination in order for the issues presently requiring decision in *Holderbaum* to be resolved.

tion, to join with his federal action his state law claim that Modern unlawfully converted his property.

## II. WILLIAMS

On or about June 17, 1973, a 1968 Pontiac LeMans automobile belonging to June Harris Williams, a graduate student at the University of Maryland, broke down on the Baltimore-Washington Parkway, and was towed at the request of Williams to the premises of O'Donnell Pontiac. Four or five days later, Williams was advised by an agent of O'Donnell that her engine was beyond repair. That agent suggested that Williams permit him to search for a second-hand engine which might be installed in the car. Williams was later informed by O'Donnell that such an engine had been found, and could be installed at a total cost of $450.00. Williams, stating that she lacked funds, requested O'Donnell not to commence work on her car until so requested. O'Donnell so agreed. Subsequently, on September 19, 1973, Williams telephoned to O'Donnell to authorize commencement of the needed repairs and was informed that her car had been sold at public sale the previous week for nonpayment of storage charges. Williams has alleged that she had no knowledge of and did not consent to such charges.

In any event it is undisputed that Williams received no notice of the proposed public sale of her car. Although O'Donnell complied with the advertising requirements of article 63, sections 41–45, the registered letter it had sent to plaintiff at her then proper address was never picked up by her, and was eventually returned marked "Unclaimed" shortly thereafter after she had moved away.

Williams' car was purchased by Edward Louke, apparently the owner and operator of an auto sales agency in Westminster, Maryland, for a price of approximately $300.00. From those proceeds O'Donnell subtracted approximately $250.00, allegedly the amount of storage fees owed, and returned a balance of $40.00 to Williams. Louke, pursuant to 6 Md.Ann.Code art. 66½, §§ 3–106 & 3–114 (1970 Replacement Vol.), applied for and received from Maryland's Motor Vehicle Administration a new certificate of title.

In her complaint, Williams initially sought $900.00 actual and $10,000.00 punitive damages against O'Donnell and Louke; a declaration that Maryland's mechanics' lien law, in not providing adequate notice to an alleged debtor and an opportunity for a judicial hearing prior to assertion of the lien,[2] is repugnant to the due process clause of the Fourteenth Amendment; and a declaration that issuance by defendant Johnson, as Administrator of Maryland's Motor Vehicle Administration, and defendant Hughes, as Secretary of Maryland's Department of Transportation, of a new title certificate without Williams' consent and without opportunity to be heard, is state action which is violative of constitutional guarantees of due process. *See* Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *cf.* Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Subsequent to institution of this suit, Williams entered into a settlement with O'Donnell and Louke pursuant to which, *inter alia,* plaintiff's automobile has been returned to her in its old inoperable condition. Accordingly, Williams now seeks only declaratory relief against Johnson and Hughes.

## III. WILLIAMS AND MOOTNESS

A basic tenet of our federal jurisprudence is that it is beyond the constitutional power of Article III courts to issue advisory opinions. Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). One necessary corollary of that limitation upon judicial

---

**2.** The Maryland law does not provide for such a hearing unless an action in replevin is instituted by a debtor who posts bond in twice the amount of the claim against him, or if he prevails in a preliminary hearing, in an amount therein judicially determined. 5B Md.Ann.Code art. 63, § 42; see Md. District Rules BQ40–52.

power is that a court is impotent to decide questions which "cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). *See also* Sibron v. New York, 392 U.S. 40, 50 n. 8, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1969). Any question as to whether dismissal of a case on the grounds of mootness is a matter of judicial discretion or a matter of judicial disability appears to have been removed by the Supreme Court's recent decision in De Funis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), establishing that it is the latter.[3] In view of Williams' settlement with O'Donnell and Louke, the question arises as to whether there is sufficient life in Williams' quest for declaratory relief to permit its adjudication between Williams on the one hand and Johnson and Hughes on the other hand.

A case is considered moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. Professor Moore suggests an issue is moot if "there are no longer adverse parties with sufficient legal interests to maintain the litigation." 6A J. Moore, Federal Practice ¶ 57.13 (1974). Judge Leventhal would find mootness where a party has no " 'substantial stake' in the controversy which assures a presentation with requisite diligence, and, indeed, 'fervor.' " Alton & Southern Ry. Co. v. International Association of Machinists & Aerospace Workers, 150 U.S.App. D.C. 36, 463 F.2d 872, 877 (1972), quoting from Sibron v. New York, *supra* 392 U.S. at 57–58, 88 S.Ct. 1889, and citing, *inter alia,* Flast v. Cohen, 392 U.S. 83, 106, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Where one or more of several issues presented in a case become moot, however, other issues which remain alive may supply the constitutional requirement of an Article III case or controversy. *See* Powell v. McCormack, 395

U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), in which an action for declaratory relief and other relief based upon allegedly unconstitutional exclusion of Powell from the 90th Congress was held not mooted by Powell's subsequent seating in the 91st Congress, since Powell's claim for back salary remained.

Williams has not maintained that under the doctrine of *Powell* her suit for declaratory relief imparts sufficient "life" to the controversy at hand that it has not become moot. That such an argument would be unavailing seems settled as a result of the Supreme Court's decision in Indiana Employment Security Division v. Burney, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62, reh. denied, 410 U.S. 970, 93 S.Ct. 1435, 35 L.Ed.2d 706 (1973). In *Burney,* the only named representative in a class action suit challenging conflicts between Indiana's unemployment insurance system and the Social Security Act, 49 Stat. 626, as amended, 42 U.S.C. § 503(a)(1), had fully settled her financial claim against the State. The Supreme Court therefore vacated the judgment of a three-judge court for a determination upon remand as to whether the suit was moot.

Williams' contention, rather, is that her suit falls within one or more of several clearly recognized exceptions to ordinary mootness standards. The first such exception exists in a case in which there has been voluntary cessation by a defendant of illegal conduct. In United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), the Supreme Court dismissed a suit by the United States to enjoin interlocking directorates allegedly in violation of the Clayton Act, because those interlocks had been voluntarily terminated. The Court did so, however, only after specifically noting that defendant in the case before it had met the "heavy" burden (at 633, 73 S.Ct.

3. *De Funis* dealt with a plaintiff seeking relief only for himself; it was not a class action. Neither is *Williams,* nor for that matter, *Holderbaum.* Plaintiff in *Williams* originally sought to bring a class action but subsequently withdrew that request.

894) of demonstrating under all the circumstances that there was no reasonable expectation that the wrong would be repeated, since in the absence of such a showing, a defendant would be "free to return" at will to his illegal "old ways" and the "public interest in having the legality of the practices settled" (at 632, 73 S.Ct. at 897) would accordingly not be satisfied. *See also* United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897). The vitality of *Grant* seems unchallenged. Allee v. Medrano, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566, 578 (1974); De Funis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164, 169 (1974). However, Williams' suit does not fall within the voluntary cessation exception. The settlement—and not *any* voluntary unilateral cessation by one or more of the defendants named by Williams—terminated the latter's grievance.

Williams also relies upon what can be deemed as a second major exception to the mootness doctrine. That exception relates to issues which could otherwise totally escape judicial review. In Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911), a terminal company sought to enjoin an order of the Interstate Commerce Commission requiring the terminal to cease, for a two-year period, from granting a preference to a certain customer. While the case was on appeal, the two-year period expired. Although noting the general mootness rule which requires dismissal of an appeal if during its pendency the Court becomes unable to grant effectual relief to appellant, the Supreme Court found such a rule inapplicable in the case before it, since the ICC's short-term orders were "capable of repetition, yet evading review". 219 U.S. at 515, 31 S.Ct. at 283.

Just as the "voluntary cessation" exception is unquestionably vital, so is the vitality of *Southern Pacific Terminal* "undeniable". Alton & Southern Ry. Co. v. International Association of Machinists & Aerospace Workers, 150 U.S.App. D.C. 36, 463 F.2d 872, 879 (1972); *see* De Funis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164, 170 (1974). A leading example is Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), in which challenges to an Illinois statute regulating nominating petitions were entertained although the political election in question for which such petitions were required had already been held. Similarly, in Women Strike for Peace v. Hickel, 137 U.S.App.D.C. 29, 420 F.2d 597, 604 (1969), a challenge to the National Park Service's denial of a permit for an August 1969 anti-war demonstration was held not mooted by a remand of the case although remand meant that the Women Strike for Peace could not schedule its program. *See also* Allen v. Hickel, 138 U.S.App.D.C. 31, 424 F.2d 944, 950 (1970). In Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), the issues related to a New Jersey statute which made economic strikers eligible for public assistance. Employers, whose employees were on strike, sought injunctive and declaratory relief, on the ground that such eligibility under New Jersey law was in conflict with federal labor law. Before the case could come to trial, the underlying dispute was settled. The Supreme Court noted (416 U.S. at 122, 94 S.Ct. at 1698, 40 L.Ed. 2d at 8) that the "challenged governmental activity * * * by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties", and went on to note (416 U.S. at 124, 94 S.Ct. at 1699, 40 L.Ed.2d at 9) that the welfare eligibility issue— one which would assuredly reoccur—"affects every existing collective-bargaining agreement, and is a factor lurking in the background of every incipient labor contract." Under those circumstances the Court concluded (416 U.S. at 125, 94 S.Ct. at 1700, 40 L.Ed.2d at 10) that it was sufficient for plaintiff to "show the existence of an immediate

and definite governmental action or policy that has adversely affected and continues to affect a present interest."

But Williams' suit does not fall within the *Southern Terminal* mootness exception. The issue in *Williams* is not one which evades review. Any person who finds himself in Williams' shoes can, by merely refusing to agree to settle his claims, present for judicial determination the validity of his 1983 claim that the Maryland's lien-sale procedure is constitutionally invalid.

Nor is there merit to Williams' reliance upon the principles set forth in Alton & Southern Ry. Co. v. International Association of Machinists & Aerospace Workers, 150 U.S.App.D.C. 36, 463 F.2d 872 (1972). In *Alton,* Judge Leventhal described (463 F.2d at 878) the "key elements" of *Southern Pacific Terminal* as "[t]he likelihood of repetition of the controversy and the public interest in assuring appellate review". Williams argues that the mere "public interest" in adjudication of the constitutionality of Maryland's mechanics' lien statute, considered together with the likelihood that plaintiff may again—as a result of her student poverty—be subjected to its procedures, satisfies *Southern Pacific's* requirements. Such an analysis of *Alton* appears misguided. Judge Leventhal's opinion notes that the mere possible recurrence of a question of law does not suffice to obviate conventional mootness and advisory opinion hurdles. *See Alton*

at 463 F.2d 879 n. 13. And if Judge Leventhal had intended otherwise, the Supreme Court's dismissal of *De Funis, supra,* despite the plethora of amicus curiae briefs submitted in that case, should serve to suggest the Supreme Court's views upon the subject.[4]

Nor does the federal Declaratory Judgment Act, 28 U.S.C. § 2201, permit an adjudication of a dispute that is "hypothetical or abstract", "academic or moot". Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937). For, as Mr. Justice Murphy, writing in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), phrased it, whether a declaratory judgment suit may or may not be heard depends upon whether, under the facts alleged, there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Accordingly, in order for a controversy to be justiciable, it must "be definite and concrete, touching the legal relations of parties having adverse legal interests", and must admit of "specific relief through a decree of a conclusive character". *Aetna, supra* 300 U.S. at 240–241, 57 S.Ct. at 464. *See also* United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947), in which the suits by certain classified Civil Service employees who asserted the unconstitutionality of

---

4. Nor does Hammond v. Powell, 462 F.2d 1053 (4th Cir. 1972), teach otherwise. In *Hammond,* plaintiff sought a declaration that a "claim and delivery" procedure under South Carolina law, which enabled a secured creditor summarily to seize goods without the need for a judicial hearing, was unconstitutional. During the pendency of the case in the federal District Court, a state court action brought by the creditor against Hammond had gone to final judgment. The District Court dismissed plaintiff's suit as moot, because the state court had already ruled that the creditor had become vested with a right to possession of the goods in question. Judge Sobeloff reversed, noting (at 1055) that the controversy in question had not been mooted by

the state court judgment, since "due to her poverty, appellant will likely again be subject to the challenged statutory procedure", and "has already purchased furniture on credit to replace that taken earlier", and that "the public interest in having this suit considered is substantial." Judge Sobeloff also wrote that "in our credit economy persons in appellant's situation are subjected to deprivation of their personal property under statutes like the one challenged." Such a statute enabled creditors to operate speedily. Accordingly, if a challenge to such a statute were mooted by the statute's own capability for speedy operation, court review might well be unavailable.

the Hatch Act's prohibitions on political activity were dismissed because no actual controversy had yet arisen. Although the Supreme Court noted (at 89, 67 S.Ct. at 564) that as Civil Service employees plaintiffs had "a right superior to the generality of citizens" to challenge the Hatch Act's provisions, that fact did not render their search for judicial determination justiciable.

In Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), a distributor of anonymous handbills concerning a political candidate's voting record sought a declaratory judgment respecting the constitutionality of a statute penalizing distribution of anonymous items. While that case was pending, the Congressman whom Zwickler had sought to criticize took office as a judge, a development which made improbable his future candidacy for elective office. Acknowledging the difficulty and possible impossibility of formulating a "precise test" (at 108, 89 S.Ct. 956) for determining the existence of a justiciable controversy, Mr. Justice Brennan cited the language of *Maryland Casualty, supra,* as the proper test for justiciability—a test which, he concluded (at 109, 89 S.Ct. at 960), Zwickler failed to meet, since it was "wholly conjectural that another occasion might arise when Zwickler might" distribute similar handbills and be prosecuted for so doing. Even in the context of a First Amendment challenge, the Supreme Court thus found (at 110, 89 S.Ct. at 960) "a specific live griev-

ance" to be a requisite element of justiciability:

> No federal court, whether this Court or a district court, has "jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, *except as it is called upon to adjudge the legal rights of litigants in actual controversies.*" * * *

(Quoting from Liverpool, N. Y. & P. S. S. Co. v. Commissioners, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885) (emphasis added by Mr. Justice Brennan)). *See also* Roe v. Wade, 410 U.S. 113, 128–129, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Lake Carriers' Association v. MacMullan, 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

For the reasons discussed *supra,* this Court concludes that Williams' suit must be deemed nonjusticiable. Accordingly, it is hereby dismissed as moot.

## IV. HOLDERBAUM AND THE GOOD FAITH DEFENSE

██ Holderbaum's suit under 1983 is not moot. But it also fails to pass the muster of the pending motion posed by the one defendant it has named. Holderbaum sues under section 1983 solely for damages flowing from the alleged violations of his constitutional rights occasioned by Modern's sale of his automobile. Even if Modern's sale of Holderbaum's car to enforce its mechanics' lien involved Modern as a "person" under section 1983,[5] Modern has available to it

---

5. On the question of whether assertion of a mechanics' lien may be said to involve state action, the courts have taken different views. See Shirley v. State Nat'l Bank, 493 F.2d 739 (2d Cir. 1974); Bichel Optical Laboratories, Inc. v. Marquette Nat'l Bank, 487 F.2d 906 (8th Cir. 1973); Cockerel v. Caldwell, 378 F.Supp. 491 (W.D.Ky.1974); Mason v. Garris, 360 F.Supp. 420 (N.D.Ga. 1973), modified as to attorney's fees, 364 F.Supp. 453 (N.D.Ga.1973); Straley v. Gassaway Motor Co., 359 F.Supp. 902 (S.D. W.Va.1973); Ford v. Dean's O.K. Tire Store, Inc., Civil No. LV 1974 (D.C.Nev. Feb. 9, 1973); Adams v. Dep't of Motor Vehicles, 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961 (1974); *cf.* Moose Lodge No.

107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); James v. Pinnex, 43 U.S.L.W. 2023 (5th Cir. June 10, 1974); Bond v. Dentzer, 494 F.2d 302 (2d Cir. 1974); Adams v. So. Cal. First Nat'l Bank, 492 F.2d 324 (9th Cir. 1973), reversing Adams v. Egley, 338 F.Supp. 614 (S.D.Cal.1972); Joy v. Daniels, 479 F.2d 1236 (4th Cir. 1973); Oller v. Bank of America, 342 F.Supp. 21 (N.D.Cal.1972).

a good faith defense which entitles it to summary judgment as to damage liability. Accordingly, it is unnecessary in this case for this Court to reach the question of whether Modern acted under "color" of state law and whether the notice provisions of the Maryland mechanics' lien meet constitutional due process standards.[6]

If defendant Modern were a state official, it would have the right to seek to establish as an absolute bar to Holderbaum's quest for damages the affirmative defense of good faith. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).[7] In this case, there has not been the slightest scintilla of a suggestion that Modern acted in other than in a good faith belief both in (a) the conformity of its actions to the standards provided by the challenged Maryland statute and procedure and in (b) the validity and constitutionality of that statute and procedure. Indeed, the parties in Holderbaum have in fact agreed that there is no dispute as to Modern's good faith in those regards.

Holderbaum does, however, question, as a matter of law, the availability of the good faith defense to Modern in a 1983 damage suit against Modern, itself of course not a state official. While no case known to this Court has seemingly yet reached that issue,[8] let alone the precise question of whether the good faith defense is available to an auto repair shop to meet an allegation of the unconstitutionality of a mechanics' lien law, simple logic appears to dictate that such a defense must be found available to a garageman such as Modern. Modern cannot be held to be a proper 1983 defendant and thus sufficiently to have utilized a state afforded official procedure to enforce its rights as to cause it to be deemed to have operated under "color of state law"—and at the same time be held not to be afforded the good faith defense available to one who asserts and acts in accordance with an assumption of validity of a very long and well established state procedure, because Modern is not itself a state official. It is true that enforcement officials [9] whose lives are in "constant danger" and whose

6. On the question of whether particular state mechanics' lien provisions comport with Fourteenth Amendment due process requirements, see Hernandez v. European Auto Collision, Inc., 487 F.2d 378 (2d Cir. 1973), reversing in part 346 F.Supp. 313 (E.D.N.Y.1972); Ruocco v. Brinker, 380 F.Supp. 432 (D.S.Fla. 1974) (three-judge court); Cockerel v. Caldwell, 378 F.Supp. 491 (W.D.Ky.1974); Lee v. Cooper, Civil No. 74-104 (D.N.J. Mar. 21, 1974); Mason v. Garris, 360 F.Supp. 420 (N.D.Ga.1973), modified as to attorney's fees, 364 F.Supp. 452 (N.D.Ga. 1973); Straley v. Gassaway Motor Co., 359 F.Supp. 902 (S.D.W.Va.1973); Ross v. Brown Title Corp., 356 F.Supp. 595 (E.D. La.1973), aff'd, 412 U.S. 934, 93 S.Ct. 2788, 37 L.Ed.2d 394 (1973); Spielman-Fond, Inc. v. Hanson's, Inc., 379 F.Supp. 997 (D.Ariz. 1973), aff'd, 417 U.S. 901, 94 S.Ct. 2596, 40 L.Ed.2d 208 (1974); Ford v. Dean's O.K. Tire Store, Inc., Civil No. LV 1974 (D.Nev. Feb. 9, 1973); Adams v. Dep't of Motor Vehicles, 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961 (1974); Willis v. Lafayette-Phoenix Garage Co., 202 Ky. 554, 260 S.W. 364 (1924); cf. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895,

40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972).

7. Skinner v. Spellman, 480 F.2d 539 (4th Cir. 1973); Scott v. Vandiver, 476 F.2d 238, 240 (4th Cir. 1973); Eslinger v. Thomas, 476 F.2d 225 (4th Cir. 1973); Hill v. Rowland, 474 F.2d 1374, 1377 (4th Cir. 1973); Francis v. Lyman, 216 F.2d 583 (1st Cir. 1954) (Magruder, J.); Cobb v. City of Malden, 202 F.2d 701, 705-707 (1st Cir. 1953) (Magruder, J., concurring); Sparrow v. Goodman, 361 F.Supp. 566 (W.D.N.C. 1973), aff'd sub nom., Rowley v. McMillan, 502 F.2d 1326 (4th Cir. 1974); Kirstein v. Rector & Visitors of University of Virginia, 309 F.Supp. 184, 189 (E.D.Va.1970); Westberry v. Fisher, 309 F.Supp. 12, 17 (D.Me.1970). See also 1 F. Harper & F. James, The Law of Torts §§ 2.44, 3.18 at 204-08, 277-78 (1956). Cf. Bivens v. Six Unknown Agents, 456 F.2d 1339 (2d Cir. 1972), as to federal officers.

8. Cf. Oasis Nite Club, Inc. v. Diebold, Inc., 32 A.F.T.R.2d 73-5141 (Civil No. 17356, D. Md. March 30, 1973).

9. See, e. g., Pierson v. Ray, supra.

functions are "indispensable to the preservation of our American way of life",[10] may have a special need for a good faith defense. However, there is also a need in a democratic society to afford to those who act in accordance with its laws and its accepted procedures protection from 1983-type damage suits resting on the alleged constitutional invalidity of such laws and procedures. If Modern did tortiously injure Holderbaum, the latter has open to him an appropriate avenue upon which to seek relief. *See* the discussion *infra* at p. 289. If Modern committed no tort, the good faith defense should be available to it in a 1983 action. Acordingly, since it is factually conceded that Modern acted in good faith, Modern is entitled to summary judgment as to Holderbaum's 1983 suit against it.

## V. HOLDERBAUM'S PENDENT CLAIM

▪ No diversity or other federal jurisdiction exists as to Holderbaum's conversion claim, considered by itself. Holderbaum seeks, however, to have this Court take pendent jurisdiction pursuant to Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), and United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[11] A federal district court does have power to entertain a state court claim whenever the relation between state and federal claims against a defendant "permits the conclusion that the entire action before the court comprises but one constitutional 'case'", in the interest of "judicial economy, convenience and fairness to litigants". *Gibbs, supra* at 725–726, 86 S.Ct. at 1139. However, "[o]nce it appears that a state claim constitutes the real body of a case, to which the

federal claim is only an appendage, the state claim may fairly be dismissed." *Id.* at 727, 86 S.Ct. at 1140. "Certainly", wrote Mr. Justice Brennan (in *Gibbs* at 726, 86 S.Ct. at 1139), "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." [12]

Holderbaum's inability to pursue his conversion claim in a federal court will not deprive him of a forum in which to assert the same, since the alleged conversion took place on March 1, 1973 and he has still time to institute a state court proceeding under Maryland's three-year tort statute of limitations, Md.Ann.Code Cts. & Jud.Proc. Art., § 5–101 (1974). Requiring Holderbaum to seek state court relief will not run afoul of considerations of economy or inconvenience or cause multiplicity of litigation of a single "nucleus of operative fact". *Gibbs, supra* at 728, 86 S.Ct. 1130. Moreover, Holderbaum's assertion of a conversion claim may raise the question of the materiality, if any, under Maryland law of defendant's reliance upon, and good faith belief in the legality of, statutory mechanics' lien procedures. This is an issue which neither party has briefed and which seems much better left for determination in the state court.

## VI. CONCLUSION

For the reasons stated, Holderbaum's state law conversion claim is hereby dismissed without prejudice; Modern's summary judgment motion as to Holderbaum's 1983 claim is granted and judgment, with prejudice in connection therewith, is entered in favor of Modern; and the motion for summary judgment by Johnson and Hughes with prejudice is hereby granted. It is so ordered.

10. Bivens v. Six Unknown Agents, 456 F.2d 1339, 1347 (2d Cir. 1972).

11. *See* Moor v. County of Alameda, 411 U.S. 693, 711–712, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

12. *See also* H. M. Hart & H. Wechsler, The Federal Courts and the Federal System 923 (1973); *but see* Rosado v. Wyman, 397 U.S. 397, 404, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). *Cf.* Webb v. Bladen, 480 F.2d 306, 310 (4th Cir. 1973).