**Charles William FLEMING, Plaintiff,**

v.

**WORKERS' COMPENSATION COMMISSION OF the COMMONWEALTH OF VIRGINIA, et al., Defendants.**

**Civ. A. No. 3:94CV710.**

United States District Court,
E.D. Virginia,
Richmond Division.

March 6, 1995.

---

Thomas Hunt Roberts and Ronald Paul Geiersbach, Roberts, P.C., Richmond, VA, for plaintiff.

John Montgomery McCarthy, Teresa Creef Manning, Michael King Jackson, Office of the Atty. Gen., and Richard Thomas Pledger, and Archibald Wallace, III, Sands, Anderson, Marks & Miller, Richmond, VA, for defendants.

### MEMORANDUM OPINION

SPENCER, District Judge.

IN THIS action, plaintiff Charles William Fleming contends that his rights to procedural due process were infringed when his former employer's workers' compensation insurance carrier, acting pursuant to state law, suspended his benefits. This Court has previously denied the defendants' Motion to Dismiss, and granted Fleming leave to file a Second Amended Complaint. *See Fleming v. Workers' Compensation Comm.*, No. 3:94CV710 (E.D.Va., Jan 27, 1995). In that pleading, Fleming named the Commissioners as party defendants, proceeding against them under the theory of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

This matter is currently before the Court upon the parties' cross motions for summary judgment, pursuant to Rule 59(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court will dismiss this action.

### I.

On June 30, 1993, Fleming injured his back while working for his employer, Calloway's Transportation, Inc. Stip. ¶¶ 1, 3. Unable to continue his employment, Fleming sought workers' compensation and, in proceedings at the Virginia Workers' Compensation Commission ("the Commission"), he was awarded $232.42 weekly as well as medical benefits. Stip. ¶¶ 3, 5. United States Fidelity and Guaranty Company ("USF & G"), Calloway's workers' compensation carrier, began making

payments to Fleming on July 28, 1993. Stip. ¶ 6.

Fleming's physician, Dr. E. Claiborne Irby, diagnosed Fleming's injury as lumbar strain with disc herniation. Stip. ¶ 8. In August of 1993, Dr. Irby suggested that Fleming's injury might require surgery. *Id.* At USF & G's request, Dr. Ralph E. Hagen rendered a second opinion. After examining Fleming, Dr. Hagen indicated that he could not recommend surgery until he had followed Fleming's condition over a greater period of time. *Id.*

On January 7, 1994, Dr. Irby referred Fleming for a Work Conditioning Evaluation at Henrico Doctors Hospital's Sports and Occupational Rehabilitation Center. Stip. ¶ 9. This test was designed to establish a baseline performance by which Fleming's progress could be measured; the ultimate goal was to determine whether Fleming would benefit from a work hardening program. *Id.* The report indicated that Fleming's injury was difficult to assess, primarily because there were no positive physical findings to corroborate his complaints of symptoms. *Id.* On January 24, 1994, Dr. Irby referred Fleming to Dr. J. Michael Simpson for examination. Stip. ¶ 10. Among his findings, Dr. Simpson noted the presence of degenerative lumbar disc disease. *Id.* While he felt that surgery was "not an unreasonable option[,] ... the chances of surgical success are in the range of 50%." *Id.* Nevertheless, Dr. Simpson felt that surgery was "probably worthwhile for [Fleming] in attempts to get him back to work." *Id.* Whether he rejected this recommendation or simply failed to come to a decision is unclear, but Fleming did not have the operation.

On March 10, 1994, Dr. Irby once again recommended surgery, basing his suggestion on Dr. Simpson's evaluation and on a recent MRI scan confirming the presence of degenerative disc disease in Fleming's back. Stip.

¶ 11. When Fleming would not agree to surgery, Dr. Irby referred him back to the Sports and Occupational Rehabilitation Center. *Id.* On March 21, 1994, the Center performed a Functional Capacity Evaluation on Fleming, which revealed that he could perform

> light level work, on a part-time basis of 3 hours daily. He would have limitations of sitting at 40 minutes at a time, standing for 15 minute periods, lifting 20 pounds occasionally from thigh to overhead, and driving an automatic vehicle for 15 minute periods.

*Id.* In addition, the Evaluation indicated that "there is strong evidence that additional surgical intervention may be necessary to retard the progression of [Fleming's] disabilities." *Id.*

Doctor Irby again conferred with Fleming, on April 26, 1994, and renewed his recommendation for surgery. Stip. ¶ 12. Fleming continued to vacillate, unable to decide whether to undergo the procedure or not. *Id.* After his next examination of Fleming, on May 4, 1994, Dr. Irby noted that given Fleming's indecision, he was crafting an alternative, conservative proposal, consisting of work hardening and functional capacity evaluations. Stip. ¶ 13. Consistent with this decision, he scheduled Fleming for a May 5, 1994, work hardening evaluation at Richmond Rehabilitation. *Id.* Fleming did not show up for the appointment. Stip. ¶ 14. On May 25, 1994, Fleming visited Dr. Irby again and explained that he missed the test for fear of the pain involved. Stip. ¶ 18.

On May 11, 1994, USF & G filed an "Employer's Application for Hearing" to terminate Fleming's award, citing his failure to attend the work hardening evaluation. Stip. ¶ 15. Pursuant to Commission Rules 1.4(C)(2) [1] and 1.5(C)(1) [2], USF & G also suspended payments on the award. Stip. ¶¶ 15,

---

1. Rule 1.4(C)(2) provides:
   Compensation shall be paid through the date the application was filed unless ... the application alleges a refusal of selective employment or medical attention or examination, in which case payment shall be made to the date of the refusal or 14 days before filing, whichever is later.

2. Rule 1.5(C)(1) provides:

   Pending acceptance or rejection of the application, the employer may suspend or modify compensation payments as of the date for which compensation was last paid.

17. Fleming filed a formal response denying the charge, and on June 1, 1994, USF & G's Application was referred to the Commission's evidentiary docket for a hearing before a Deputy Commissioner. Stip. ¶¶ 15, 17a, 19. Although docketed, however, the Application was not set for a hearing. Stip. ¶ 17a.

On June 6, 1994, Dr. Irby notified USF & G that he had rejected the proposed work hardening regimen, and had instead recommended that Fleming seek work within the guidelines set by Sports and Occupational Rehabilitation Center in March. Stip. ¶¶ 20–21. Because Fleming's failure to pursue the work hardening had prompted the action, USF & G withdrew its Application on June 17, 1994. Stip. ¶ 22. And, with the withdrawal of the Application, USF & G reinstated Fleming's compensation after a lapse of some 38 days. Stip. ¶ 22.[3] The Commission dismissed USF & G's Application without prejudice on June 21, 1994, and removed the case from its docket. Stip. ¶ 23. The matter had never been set for a hearing. Stip. ¶ 17a.

Fleming thereafter commenced a search for employment meeting the guidelines of the March evaluation. Stip. ¶ 24.[4] On October 10, 1994, he interviewed with Colonial Security Services about a position as a security officer. Stip. ¶ 24, 26. Offered a position from 4 p.m. to 12:00 p.m. on Saturday and Sunday, and 10 p.m. to 6 a.m. Tuesday and Wednesday, Fleming stated that he wanted the job; however, he felt obliged to consult with Dr. Irby regarding the prudence of working eight hour shifts. Stip. ¶ 25. In addition, he told Colonial that he had no transportation. Id. Colonial's records of October 14, 1994, indicate that Fleming had declined the job offer due to a lack of transportation. Stip. ¶ 26. The Company noted that a position was still open for Fleming if transportation became available. Id.

On November 7, 1994, USF & G filed another "Employer's Application for Hearing" requesting the termination of Fleming's award for his alleged refusal to accept selective employment within his physical capacity. Stip. ¶ 27. With this Application, USF & G again suspended compensation payments. Id. On November 16, 1994, Fleming attempted to enforce his award by requesting that the Commission certify it to state circuit court; he based his request upon USF & G's alleged failure to comply with the award. Stip. ¶ 28.[5] The Commission refused Fleming's request, stating that it would not certify an award that had been validly suspended by the filing of an Employer's Application. Stip. ¶ 29. The Commission then referred the Application to its Dispute Resolution Department. Stip. ¶ 17a.[6]

Fleming responded to USF & G's Application on November 22, 1994. He denied any wrongdoing, explaining that he believed that the Colonial opening required use of personal vehicle. Stip. ¶ 30.[7] The next day, November 23, 1994, USF & G learned that Colonial had withdrawn its earlier offer of employment, but had issued Fleming another offer, set to expire on November 30. Stip. ¶ 32–33. Consequently, USF & G requested that the Commission allow it to reply to Fleming's response after that date. Stip. ¶ 33.

On November 30, 1994, the Commission declared that USF & G lacked probable cause to justify suspending Fleming's benefits. Stip. ¶ 34. It therefore rejected the

---

3. On average, it takes 150 days from receipt of a Employer's Application for the Commission to issue a final opinion based on an evidentiary hearing. Stip. ¶ 17a.

4. During the interim, Fleming filed this lawsuit. Although filed on September 21, 1994, the original Complaint was not served upon the defendants.

5. Virginia provides for such a procedure by statute. *See* Va.Code Ann. § 65.2–710 (Michie 1991).

6. In this procedure, a hearing officer reviews the Application and attempts to foster a settlement of the dispute without a hearing. If this proves fruitless, the matter is set for a hearing and resolved solely by reference to the record. From filing to resolution, this process takes, on average, 70 days. Stip. ¶ 17f.

7. That same day, Fleming filed his First Amended Complaint in this Court. He served the Commission and USF & G on November 28. He also filed a Motion for a Temporary Restraining Order.

Application and reinstated all benefits. *Id.*[8] Fleming had been without benefits for some 23 days.

## II.

Under Rule 56(c), a motion for summary judgment may be granted "only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Magill v. Gulf & W. Indus., Inc.,* 736 F.2d 976, 979 (4th Cir.1984) (quoting Fed.R.Civ.P. 56(c)); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *EEOC v. Clay Printing Co.,* 955 F.2d 936, 940 (4th Cir.1992). "Where ... the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *United States v. Lee,* 943 F.2d 366, 368 (4th Cir.1991) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## III.

In this lawsuit, Fleming claims that he was deprived of his right to procedural due process because his benefits were suspended without notice and a pre-deprivation opportunity to present his position. He claims that the suspension of his benefits denied him his means to live and the ability to pay for medical care. Consequently, he seeks (1) a judgment against USF & G for $600,000 in compensatory and punitive damages; (2) a declaration that the Commission's rules and procedures violate the due process clause of the Fourteenth Amendment; (3) preliminary and permanent injunctions barring the defendants from suspending his compensation award without a hearing comporting with due process; (4) an injunction requiring the Commissioners to alter Commission rules and procedures to afford due process; and (5) attorneys fees.

Fleming argues forcefully that his reliance upon workers' compensation benefits is tantamount to the so-called "brutal need" for welfare benefits that the Supreme Court found substantial enough to warrant pretermination procedures. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The defendants disagree, directing this court to precedent suggesting that no such process is required for workers' compensation benefits. *See Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994); *see also Sauceda v. Washington Dept. of Labor & Indus.,* 917 F.2d 1216, 1219 (9th Cir.1990); *but see Baksalary v. Smith,* 579 F.Supp. 218 (E.D.Pa.1984), *appeal dismissed sub nom. Allstate Ins. Co. v. Baksalary,* 469 U.S. 1146, 105 S.Ct. 890, 83 L.Ed.2d 906 (1985). Before the Court can reach this issue, however, it must first address the defendants' contention that it no longer has subject matter jurisdiction over this dispute.

### A.

■ The defendants argue that Fleming's claim is moot, pointing to the restoration of his benefits. Confronted with this challenge to subject matter jurisdiction, Fleming must therefore justify the exercise of federal judicial power. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992).

This Court is, of course, constitutionally incapable of rendering a decision in the absence of a true case or controversy. U.S. Const. art. III, § 2, cl. 1. Fleming must convince the Court that this case is

> definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character.

Charles A. Wright, *Law of Federal Courts,* § 12, at 53 (4th ed. 1983); *see also Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).

■ As far as his claim touches the governmental defendants, however, he fails

---

8. Hence, Fleming has received all wage and medical payments ever due to him. He does, however, claim that he is owed interest. Stip.

¶ 34. With the restitution of his award, Fleming withdrew the Motion for a Temporary Restraining Order filed in this Court.

this test. Fleming is merely seeking a declaration that he was once injured, and an order barring these defendants from acting in similar fashion in the future. To have an actual controversy, however, the legal interest to be vindicated "must be more than simply the satisfaction of a declaration that a person was wronged." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir.1994) (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172–73, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977)). Likewise, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Renne v. Geary*, 501 U.S. 312, 321, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991) (citation omitted).

*Williams v. Johnson*, 386 F.Supp. 280 (D.Md.1974), arose when a garagemen sold an automobile for nonpayment of storage charges. *Id.* at 283. Acting pursuant to state law, Maryland officials issued a new certificate of title to the car without affording the true owner an opportunity to be heard. *Id.* The owner of the car filed suit against all parties involved, seeking a declaration that his rights to due process had been violated. *Id.* However, he promptly reached a settlement with the garageman and the purchaser. *Id.* Thus, all that remained was a claim for a declaratory judgment that the Maryland procedure was unconstitutional. *Id.* In light of the settlement, the *Williams* court held that the case was moot. *Id.* at 287.

This case compels a similar result. It is academic whether Fleming's rights were violated by the suspension of his benefits, because his award has been fully restored. Thus, Fleming's claims for declaratory and injunctive relief are moot. *See Watkins v. Chicago Housing Auth.*, 406 F.2d 1234, 1237 (7th Cir.1969) (restoration of public housing residents to their homes extinguished any controversy between parties and mooted claim for declaratory and injunctive relief).

▮ Striving to avoid this result, Fleming urges this Court to find that his claim is "capable of repetition yet evading review." *See Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). The Court disagrees. Under this exception to the case or controversy requirement, new life can be breathed into a moot dispute if

> (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.

*Id.* at 482, 102 S.Ct. at 1183. This exclusion applies only in "exceptional situations." *Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983).

▮ The Court is not persuaded that the suspension of Fleming's benefits constitutes such a circumstance. Even assuming, without deciding, that the suspension of workers' compensation benefits is an event of such short duration that it cannot be brought to federal judicial attention,[9] Fleming has failed to show a reasonable expectation that his benefits will be suspended again.[10] Fleming's bald assertion that his benefits likely will be suspended again is not enough, nor does it suffice to show that he is still covered by workers' compensation. If a "mere physical or theoretical possibility was sufficient ... virtually any matter of short duration would be reviewable." *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183. Instead, Fleming must show "a demonstrated probability" that the same controversy will arise again. *Id.* This requires "a reasonable quantity of proof—perhaps even [a showing] by a preponderance of the evidence." *New Jersey Turnpike Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 33 (3d Cir.1985).

---

9. However, such a proposition appears inimical to the substance of Fleming's claim of hardship.

10. Fleming argued at the hearing on this matter that "claimants like him" likely would have their benefits suspended. That is of no moment. This lawsuit, brought by Fleming alone, addresses the constitutional deprivations allegedly endured by one man. Hence, the issue is whether *Fleming* can reasonably expect to suffer the same action in the future. Even the wrong alleged is capable of repetition against others, a case is nevertheless moot if the plaintiff cannot establish that it is capable of repetition against himself. *Grossberg v. Deusebio*, 380 F.Supp. 285, 292 (E.D.Va.1974).

Fleming has shown only that his benefits were twice suspended within a short span of time. That alone does not establish a recurring problem or pattern of application that is reasonably likely to continue into the future. For this situation to reoccur, two events must come to pass. First, Fleming must arguably fail to accept selective employment or reasonable and necessary medical treatment, giving USF & G arguable cause to filed an Employer's Application. Second, USF & G must elect to file an Application. Neither of these two actions is demonstrably probable. Fleming clearly lacks the incentive to unjustifiably refuse employment or medical services. Thus, no Application can be reasonably anticipated unless the Court presumes that USF & G is wont to file without merit. However, the ineffectiveness of USF & G's past two Applications demonstrates the futility of such a measure. Thus, neither action is in the actor's best interest. Finding nothing more than speculation that this problem will resurface, the Court declines the opportunity to "dance merrily through the pages of [the Commission Rules] with scissors in hand." *Stover v. Meese,* 625 F.Supp. 1414, 1419 (S.D.W.Va.1986).

Accordingly, the Court holds that Fleming's action against the governmental defendants is moot. His claims for injunctive and declaratory relief, therefore, will be dismissed. Fed.R.Civ.P. 12(h)(3). However, because a dismissal for jurisdictional defects is not a judgment on the merits, these claims are dismissed without prejudice. *See Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977); *F.D.I.C. v. James J. Madden, Inc.,* 847 F.Supp. 374, 375 (D.Md.1994).

USF & G, by contrast, cannot make such a smooth departure from the case. Fleming's claim for money damages from the carrier presents a live issue over which these parties are clearly adverse. To this extent, then, Fleming's claim still presents an actual case or controversy. *See Ransom v. Marrazzo,* 848 F.2d 398, 410 (3d Cir.1988) (institution of constitutional procedures does not moot a damage claim based on the original deprivation); *Soffer v. City of Costa Mesa,* 607 F.Supp. 975, 979 (C.D.Cal.1985) (damage claim, even one for nominal damages, sur-vives where claims for injunctive or declaratory are mooted by change in challenged city ordinance), *aff'd in part and rev'd in part on other grounds,* 798 F.2d 361 (9th Cir.1986).

## B.

The Court next inquires whether USF & G can be held liable for allegedly violating Fleming's right to due process under 42 U.S.C.A. § 1983 (West 1994). To prevail, Fleming must establish that USF & G, while acting under color of state law, intentionally deprived him of a federal right. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). USF & G levels its sights at the first of these elements, challenging Fleming's assumption that, by suspending his award pursuant to Commission Rules 1.4 and Rule 1.5, it acted "under color of law."

The requirements of the due process clause do not apply "to acts of private persons or entities." *Rendell–Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982). Instead, to be held liable, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

A party does not become a state actor merely because it took advantage of a statutory right. *See, e.g., Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 166, 98 S.Ct. 1729, 1738, 56 L.Ed.2d 185 (1978). Rather, the plaintiff must show "something more." *Lugar,* 457 U.S. at 939, 102 S.Ct. at 2754. For example, a private person may engage in "self-help," as authorized by the Uniform Commercial Code, and sell stored goods at a private sale without becoming a state actor. *Flagg Bros.,* 436 U.S. at 166, 98 S.Ct. at 1738. He does, however, act under color of law if, at his request, a court clerk issues a prejudgment writ of attachment on property, which is then seized by the sheriff. *Lugar,* 457 U.S. at 942, 102 S.Ct. at 2756.

As interpreted by the Fourth Circuit, there are three situations in which a

private actor may be found to have acted under color of state law:

> The first situation is the symbiotic relationship and occurs when there is
>
>> a sufficiently close nexus between the state and the challenged action of the regulated entity such that those action may be fairly treated as those of the state; the inquiry is whether the state is responsible for the specific conduct of which the plaintiff complains.
>
> The second situation involves extensive governmental regulation of a private entity: a state may be held responsible for private conduct only when it has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state. The final situation occurs when the private entity has exercised powers that are traditionally the exclusive prerogative of the state.

*Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 215 (4th Cir.1993) (internal citations and quotations omitted).

Courts making this inquiry in the workers' compensation arena have tended to invoke the first of these exceptions, asking whether the insurer and the state jointly deprived a recipient of benefits. *See Grenz v. EBI/Orion Group, Inc.,* 968 F.2d 1220, 1992 WL 158158 (9th Cir. July 9, 1992); *Barnes v. Lehman,* 861 F.2d 1383 (5th Cir.1988); *Baksalary,* 579 F.Supp. at 232. Fleming maintains that just such a symbiotic relationship exists between the Commonwealth of Virginia and USF & G.

Under the workers' compensation scheme at issue in *Baksalary,* a carrier could terminate benefits without notice to the recipient by filing a supersedeas. 579 F.Supp. at 219. Before the termination became effective, however, the insurer was required to file a petition explaining its rationale for ceasing benefits. *Id.* at 231. Benefits would not terminate until the state reviewed the petition for procedural merit or technical compliance. *Id.* The court held that this combination of filing and review "was sufficient to

constitute 'joint participation' and to subject private invocation of the automatic supersedeas to the due process clause." *Id.* at 232.

In *Barnes,* a carrier suspended benefits to a compensation recipient after his physician released him back to work. The Fifth Circuit "decline[d] to embrace the reasons of *Baksalary*" and refused to find that an insurer and physician became state actors by virtue of workers' compensation regulation. 861 F.2d at 1387. The court noted that "[r]egulations that dictate procedures, forms, or even penalties *without dictating the challenged action* do not convert private action into state action." *Id.* (citing *Blum v. Yaretsky,* 457 U.S. 991, 1010, 102 S.Ct. 2777, 2788, 73 L.Ed.2d 534 (1982) (emphasis in original). Where the statute permitted the insurer to suspend benefits in reliance upon medical advice, but left the ultimate decision to the insurer (with the proviso that the insurer explain its action within 10 days), the court found that the insurer was not a state actor. *Id.* "Procedural regulations," concluded the court, "simply do not suffice to establish the degree of joint participation required to convert private action into state action." *Id.*

Finally, in an unreported decision, the Ninth Circuit held that an insurer did not act under color of law by convening a medical review panel, and then relying upon its findings to reduce its payments to a workers' compensation recipient, even though the review panel was authorized by a state law. *Grenz,* 1992 WL 158158, at **1. The Court found that by acting under the statute, the insurer was not exercising powers traditionally reserved to the state because the insurer, not the panel, decided whether to suspend benefits or not, and because the insurer's decision was appealable within the workers' compensation system. *Id.* Nor was there evidence that Montana significantly encouraged the insurer or had anything to do with a medical review panel decision or what the insurer decide[d] to do based on its findings. *Id.* Accordingly, the Court affirmed the dismissal of constitutional claims against the insurer.[11]

---

11. In addition, the Eleventh Circuit recently noted "serious state action questions raised by" a

suit alleging that an insurer had violated the due process clause by terminating benefits, as autho-

In Virginia, an employee's right to compensation ceases upon her unjustified refusal to accept suitable employment, Va.Code Ann. § 65.2–510 (Michie 1991), or medical or vocational rehabilitation services. § 65.2–603(B) (Michie Supp.1994). To implement this, Commission Rule 1.5(C)(1) permits an insurer to suspend or modify compensation pending acceptance or rejection of an Employer's Application filed to allege such an unjustified refusal. On the basis of the undisputed facts before it, the Court finds that this explicit authorization does not constitute the "something more" that Fleming requires to proceed with his § 1983 claim. USF & G is authorized, but not required, to suspend benefits. And, while the Commonwealth authorizes the challenged action, it does not dictate it. In the final analysis, the ultimate decision whether to suspend benefits rests with the insurer.

While not raised by Fleming, there is perhaps one aspect of this case that might rise to state action. By statute, Virginia denies an insurer the right to recoup benefits wrongly paid to an employee. *See* Va.Code. Ann. § 65.2–708(A) (Michie 1991). As a consequence, the insurer has a clear incentive to suspend benefits whenever it believes it has cause. Arguably, this inducement could be seen to so involve the state in the insurer's decisionmaking process that the two are joint actors. *Cf. Adickes*, 398 U.S. at 211–212, 90 S.Ct. at 1631 (Brennan, J., concurring in part and dissenting in part) ("A private person acts 'under color of' a state statute or other law when he, like the state official, in some way acts consciously pursuant to some law that gives him aid, comfort or *incentive*") (emphasis added).

However, as the *Barnes* court noted, there is a world of difference between statutory inducement and statutory coercion. 861 F.2d at 1387. In *Blum v. Yaretsky*, state Medicaid regulations penalized health care providers who failed to discharge or transfer patients when continued medical care was no longer necessary. 457 U.S. at 1010, 102 S.Ct. at 2788. The plaintiffs argued that such

regulations gave providers the incentive to abandon patients and that, therefore, the state should be held responsible for these decision. *Id.* The Supreme Court rejected this reasoning, stressing that "those regulations themselves do not dictate the decision to discharge or transfer *in a particular case.*" *Id.* at 1010, 102 S.Ct. at 2788–89 (emphasis added).

The same is true here. While the Commonwealth's statutory scheme certainly gives an insurer the ability to suspend benefits whenever it files an Employer's Application, and may even give it the incentive to so act, the decision whether or not to suspend benefits in an individual case is the insurer's alone. A web of regulation notwithstanding, there is no symbiotic relationship where benefit suspensions are concerned; the Commonwealth is not responsible for USF & G's actions. To the contrary, in each particular case, the Commonwealth exercises an impartial role, limited to adjudicating the merits of the Employer's Application. Therefore, this litigation plainly lacks the significant predeprivation state involvement that the *Baksalary* court found so compelling. Rather, this case is more akin to *Barnes* and *Grenz;* USF & G simply complied with the Commission procedure and exercised its statutory prerogative.

Accordingly, the Court holds that USF & G was not acting under color of state law when it filed its Employer's Applications. USF & G is therefore entitled to judgment as a matter of law. *Cf. Carter v. Norfolk Community Hosp. Ass'n,* 761 F.2d 970, 974 (4th Cir.1985) (§ 1983 claim that fails for lack of state action should be dismissed with prejudice).

### IV.

For the reasons stated, the Court will dismiss Fleming's claims against the state defendants without prejudice. Fed.R.Civ.P. 12(h)(3). The Court will grant USF & G's

---

rized by law, without giving the recipient prior notice. *Cryder*, 24 F.3d at 177 (11th Cir.1994). Despite these misgivings, the court assumed for

the sake of argument that the insurer had acted "under color of law." *Id.*

Motion for Summary Judgment, and deny Fleming's Motion for Summary Judgment.