**Jeffrey D. BARNES, Plaintiff–Appellant,**

v.

**Sam R. LEHMAN, M.D., United States Fire Insurance Company and Crum and Forster Insurance Companies, Defendants–Appellees.**

No. 88–1288.

United States Court of Appeals,
Fifth Circuit.

Dec. 28, 1988.

Gerald K. Fugit, Eva–Marie E. Leahey, Odessa, Tex., for plaintiff-appellant.

Jack O. Tidwell, McMahon, Cox & Tidwell, Odessa, Tex., for Lehman, M.D.

Timothy D. Yeats, Ivan R. Williams, Jr., Big Spring, Tex., for U.S. Fire Ins. Co., et al.

Before REAVLEY, HIGGINBOTHAM and SMITH, Circuit Judges.

REAVLEY, Circuit Judge:

Jeffrey Barnes brought an action under 42 U.S.C. § 1983 against his doctor and his insurer under the Texas Workers' Compensation Law. The district court dismissed the cause for failure to state a claim. We affirm.

## BACKGROUND

In January of 1987, Barnes injured his back while engaged in his job on an oilfield drilling rig. Barnes filed a claim for temporary disability benefits and, pursuant to Workers' Compensation Law, Tex.Civ.Stat. Ann. art. 8306–8309 (Workers' Comp. Law), he received weekly benefits from January 21, 1987 to October 20, 1987. In October of 1987, Barnes was seen by his doctor, defendant Sam Lehman, M.D., who released him to return to work. Complying with termination provisions of the Workers' Comp. Law, art. 8306 § 18a(b) and art. 8307 § 11, the defendant insurance company[1] ceased payment of weekly benefits based on Lehman's medical opinion. Barnes obtained an examination and opinion from another doctor who found Barnes to be suffering from a back injury and in need of further convalescence. The insurance company refused to reinstate benefits despite Barnes's protestations that Lehman had rendered an uninformed diagnosis.

Pursuing his remedies under the Workers' Comp. Law, Barnes requested a prehearing conference. Art. 8306 § 18a(b). The conference officer, a representative of the Texas Industrial Accident Board, recommended that benefits be reinstated. The insurance company was not bound to follow the recommendation and the benefits were not resumed. Barnes filed suit in state court contesting the termination of

---

1. We refer to the insurance defendant or defendants in the singular although two insurance companies were named in the complaint. Only one, United States Fire Insurance Company, was properly served with process. The two companies are apparently affiliated and no objection to improper service has been raised.

benefits. He also filed this suit in federal district court alleging claims under 42 U.S.C. §§ 1983, 1985(3) and state law.[2] The district court dismissed the federal claims; Barnes appeals the dismissal of his § 1983 claim.

The complaint filed in federal court alleges that the insurance company and Dr. Lehman deprived Barnes of a vested property right without due process of the law in violation of the United States Constitution. Barnes claims that the disability benefits were seized in violation of the Fourth Amendment and that the lack of an adequate remedy violates his right to due process of law under the Fourteenth Amendment. The defendants, Barnes claims, were "acting under color of statute, ordinance, regulation, custom, or usage of a state; specifically … the Texas Worker's Compensation Act."

In dismissing the § 1983 complaint, the district court held that Barnes failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court concentrated on the issue of whether a nexus existed between the state and the challenged action sufficient to find the necessary element of "state action." Taking Lehman's allegedly uninformed medical opinion and the termination of benefits based on that opinion as the challenged actions, the district court found that the insurance company's reliance on a medical opinion is not a matter within the supervision of the state; the court found no state encouragement of, coercion of, approval of, or responsibility for the challenged action. The sole issue raised on appeal is whether a sufficient nexus exists between the State of Texas and the challenged actions of a doctor and an insurance company to state a cause of action for money damages under § 1983.

2. The state claims were dismissed without prejudice.

3. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

## DISCUSSION

A viable cause of action under § 1983 alleges the violation of a federally protected right at the hand of one acting under color of state law.[3] The defendants to this action are private persons or private entities. Barnes has failed to show that any deprivation he may have suffered occurred under color of state law or through state action; we need not, therefore, determine whether the defendants violated a federally protected right by depriving Barnes of a vested property interest. The analysis of state action under the Fourteenth Amendment and the analysis of action under color of state law may coincide for purposes of § 1983. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982). The terms often are used interchangeably in the case law; we do the same here.

■ Whether the conduct of private parties is state action depends on the specific facts and circumstances surrounding the challenged action. *See Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961); *Roberts v. Louisiana Downs, Inc.,* 742 F.2d 221, 224 (5th Cir.1984). The imposition of state regulation does not necessarily turn the actions of a private entity into those of the state. A sufficiently close nexus must be shown to exist between the state and the challenged action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). That nexus may arise from the exercise, by a private entity, of powers traditionally within the exclusive prerogative of the state. *Id.* at 352–53, 95 S.Ct. at 454–55. A private decision may constitute state action when the state has exercised

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

coercive power or provided significant overt or covert encouragement. Mere acquiescence or approval, however, is insufficient for such a finding. *See Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 166, 98 S.Ct. 1729, 1737–38, 56 L.Ed.2d 185 (1978).

■ Whether the various approaches to detecting state action are different in operation or just different in characterization, the challenged conduct in a § 1983 action must be fairly attributable to the state. The United States Supreme Court issued a trilogy of state action cases applying the existing incantations to varying facts. *See Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). In *Lugar,* the opinion most instructive to the analysis of this case, the Court relied upon the joint participation of private and state actors to find the challenged conduct of the private actor to be fairly attributable to the state.

*Lugar* presents a condensed two-prong test for determining whether conduct may be considered state action for purposes of § 1983:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

457 U.S. at 937, 102 S.Ct. at 2753. In *Lugar,* a Virginia statute authorized state employees to issue and execute a writ of attachment based on the ex parte allegations of a corporate creditor. The Court held that joint participation of the state and a private party, sufficient to turn the latter into a state actor, occurs "when the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dis-

pute." *Id.,* 457 U.S. at 942, 102 S.Ct. at 2756.

■ Barnes urges us to follow the opinion of *Baksalary v. Smith* which held that a sufficient nexus between the state and private conduct was created in the context of Pennsylvania's Workmen's Compensation Act. 579 F.Supp. 218 (E.D.Pa.1984) (opinion by Louis H. Pollak, District Judge). A three-judge panel of a federal district court applied the *Lugar* analysis and holding to find joint participation of the state and a private actor constituted state action. We decline to adopt the broad interpretation given in *Baksalary* to the narrow holding of *Lugar.*

In *Baksalary* the Pennsylvania Workmen's Compensation Act contained an automatic supersedeas provision which terminated benefits upon the insurer's petition that the worker had returned to work at comparable wages or that a doctor's affidavit affirmed the worker's recovery. The panel found the plaintiffs, a class of workers who lost their benefits without notice or hearing, to have been deprived of a constitutionally protected property interest in the continued receipt of their benefits. *Id.* at 224–25 (citing *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976)).

To determine whether deprivation of the protected interest was accomplished by state action, the *Baksalary* opinion employed the two-prong *Lugar* analysis. First, the court found that the insurer exercises a state created right or privilege when it terminates or suspends benefits without notice. Specifically the insurer must continue payments unless it qualifies for a supersedeas; in order to qualify for the supersedeas, the insurer must file a petition which is reviewed by the state for technical compliance; the insurer can be fined if it discontinues benefits without qualifying; thus, "[t]ermination through invocation of the automatic supersedeas provision ... constitutes 'the exercise of some right or privilege created by the state.'" *Baksalary,* 579 F.Supp. at 227–28 (quoting *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2753).

In satisfaction of the second prong of the *Lugar* analysis, the *Baksalary* court found the filing and review process required by the automatic supersedeas provision was sufficient to constitute "joint participation" and transform the private insurer into a state actor. *Baksalary*, 579 F.Supp. at 230–32. *Lugar* held that joint participation occurred from the invocation of the "aid of state officials to take advantage of state-created attachment procedures." 457 U.S. at 942, 102 S.Ct. at 2756. With this language, *Baksalary* decides that joint participation is constituted by the private filing and state review requisite to taking advantage of the supersedeas. *Baksalary*, 579 F.Supp. at 231–32.

Barnes contends that an insurance company invokes "the aid of state officials, prehearing officers, and the Texas Industrial Accident Board" when filing the forms incident to ceasing payments. The petition filing process was not the "aid of state officials" referred to by the Court in *Lugar;* in prejudgment attachments, the state aids the private party by executing the attachment. As the Court pointed out in *Blum*, there must be active encouragement or coercion by the State. 457 U.S. at 1004, 102 S.Ct. at 2785; *cf. Roberts v. Louisiana Downs, Inc.*, 742 F.2d 221 (5th Cir. 1984) (state regulation and control was so intimate with challenged action that it could be attributed to the state). Regulations that dictate procedures, forms, or even penalties *without dictating the challenged action* do not convert private action into state action. *Blum*, 457 U.S. at 1010, 102 S.Ct. at 2788. The decision to adopt Dr. Lehman's opinion as final and to cease Barnes's benefits was a decision initiated and carried out by the insurer and not the state.

The *Lugar* majority attempted to allay fears that its holding would be used to transform every invocation of state legal procedures into joint participation. The analysis purportedly made clear that the holding was "limited to the particular context of prejudgment attachment." *Lugar*, 457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21. Nevertheless, Barnes urges us to find, as the *Baksalary* panel did, that a prejudg-ment attachment can be equated to a summary termination of compensation benefits without an adjudication or an administrative hearing. As we decline to embrace the reasoning of *Baksalary*, we decline to find joint participation between the State of Texas and the defendants via the Texas Workers' Comp. Law.

Distinguishing *Lugar* from this case is analogous to the distinction relied upon by the Court in *Flagg Bros*. In that case, the Court held that the "total absence of overt official involvement plainly distinguishes" the actions of private entities pursuant to a self-help provision of the New York commercial code from the actions of creditors acting jointly with state officers pursuant to prejudgment attachment procedures. *Flagg Bros.*, 436 U.S. at 157, 98 S.Ct. at 1733. The context of prejudgment attachment is clearly unique. We are unpersuaded by the attempts in *Baksalary* to distinguish the statute in *Flagg Bros.* as a mere codification of the ordinary way of doing things and to characterize the joint participation in *Lugar* as "a special filing process specifically created by the state" and thus to equate it with the challenged action in *Baksalary*. *Baksalary*, 579 F.Supp. at 228. Procedural regulations simply do not suffice to establish the degree of joint participation required to convert private action into state action.

Barnes asserts that the statutory scheme of the Workers' Comp. Law encourages insurers to terminate benefits without due process by limiting the available relief employees may seek. He distinguishes the reasoning of *Daigle v. Opelousas Health Care, Inc.*, in which the Fifth Circuit failed to find the conduct of a nursing home to be state action. 774 F.2d 1344 (5th Cir.1985). Without more, the court held, detailed regulation and extensive funding does not constitute the type of nexus necessary to find state action. *Id.* at 1349 (relying upon *Rendell–Baker v. Kohn* and *Blum v. Yaretsky*). Admittedly, the Workers' Comp. Law provides a statutory framework for a system more dependent on the state for its creation than is the system of operating nursing homes. The statutory

framework, however, did not leave Barnes without relief. His action in state court following the prehearing conference contradicts his argument that Texas limits employees' access to remedies and thus creates a scheme that encouraged the defendants to violate federally protected rights.

Texas, like most states, endorses a compensation system as a matter of policy. Approval of the system, however, does not automatically burden the state with responsibility for every instance of its application. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357, 95 S.Ct. 449, 456, 42 L.Ed.2d 477 (1974). The challenged action in this case, the termination of benefits prior to a hearing, did not occur with the defendants' exercise of powers "traditionally exclusively reserved to the State." *Jackson*, 419 U.S. at 352, 95 S.Ct. at 454. The insurer and not the State of Texas is responsible for the provision of benefits to the employee.

Barnes fails to state a cause of action under § 1983 because the challenged actions of Dr. Lehman and the defendant insurance company may not be fairly attributed to the state. No deprivation "under color of state law" has been shown. Although the preceding analysis has been primarily aimed at the challenged action of the insurer, we are confident that Dr. Lehman's professional medical opinion is not state action. Dr. Lehman's opinion, whatever its quality, ultimately turned on his medical judgment based on professional standards independent of the state. *Blum*, 457 U.S. at 1008, 102 S.Ct. at 2787. Barnes made no claim that the choice of Dr. Lehman as his physician was influenced by the insurance company or the Texas Workers' Comp. Law. He made no showing that Dr. Lehman's opinion was encouraged, coerced or dictated by the state. As to all defendants, Barnes has failed to state a claim upon which relief may be granted.

AFFIRMED.