Delores Scott SULLIVAN,
et al., Plaintiffs,

v.

Robert BARNETT, et al., Defendants.

Civil Action No. 95–201.

United States District Court,
E.D. Pennsylvania.

Jan. 24, 1996.

Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, Thomas J. O'Brien, Philadelphia, PA, Lorrie McKinley, Community Legal Services, Inc., Philadelphia, PA, for Delores Scott Sullivan, William Battle, Anthony Cancila, Charles Matthews, Christopher Costello, Lisa Lex, Susan Hansen, Philadelphia Area Project on Occupational Safety and Health.

Ralph J. Teti, Willig, Williams & Davidson, Philadelphia, PA, for The Philadelphia Federation of Teachers, Local 3, AFL–CIO.

Susan J. Forney, Office of Attorney General, Harrisburg, PA, for Robert Barnett, Frank Beal, Constance B. Foster, Catherine Baker Knoll, John P. O'Malley.

Arthur Makadon, Robert McL. Boote, Burt M. Rublin, Celia E. Henry, Ballard

Spahr Andrews & Ingersoll, Philadelphia, PA, for American Manufacturers Mut. Ins. Co., Continental Cas. Co., Defendant USF & G Ins. Co., Zurich American Ins. Co.

Edward D. Rogers, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Cigna Corp.

Stephen J. Springer, Pamela Tobin, Patrick Vitullo, Labrum and Doak, Philadelphia, PA, for School Dist. of Philadelphia.

## *MEMORANDUM*

BUCKWALTER, District Judge.

## I. BACKGROUND

Plaintiffs in this putative civil rights class action claim to be persons who had been receiving medical benefits pursuant to the Pennsylvania Worker's Compensation Law, and who were thereafter deprived of those benefits without prior notice or an opportunity to be heard pursuant to what plaintiffs' counsel characterize as an "automatic supersedeas" as provided by Section 306(f.1)(5) of the aforesaid law, as amended, 77 P.S. 531(5) (Supp.1994), which provides in part as follows:

The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department. Within thirty (30) days of the filing of such an application, the department shall render an administrative decision.

Paragraph 6 provides, in part, as follows:

Except in those cases in which a referee asks for an opinion from peer review under section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Organizations not authorized by the department may not engage in such utilization review.

(ii) The utilization review organization shall issue a written report of its findings and conclusions within thirty (30) days of a request. If the provider, employer, employe or insurer disagrees with the finding of the utilization review organization, a request for reconsideration must be filed no later than thirty (30) days after receipt of the utilization review report. The request for reconsideration must be in writing.

(iii) The employer or the insurer shall pay the cost of the initial utilization review. The party which does not prevail on reconsideration of an initial review shall bear the costs of such reconsideration.

(iv) If the provider, employer, employe or insurer disagrees with the finding of the utilization review organization on reconsideration, a petition for review by the department must be filed within thirty (30) days after receipt of the reconsideration report. The department shall assign the petition to a referee for a hearing.

The "automatic supersedeas" to which plaintiffs refer is implemented by regulations which, as of November 11, 1995, provide in part as follows. All regulations hereafter set forth come from exhibits supplied to the court by plaintiffs' counsel.

## § 127.208. Time for payment of medical bills.

(a) Payments for treatment rendered under the act shall be made within 30 days of receipt of the bill and report submitted by the provider.

(e) The 30–day period in which payment shall be made to the provider may be

tolled only if review of the reasonableness or necessity of the treatment is requested during the 30-day period under the UR provisions of Subchapter C (relating to medical treatment review). The insurer's right to suspend payment shall continue throughout both the initial review and the reconsideration review of the UR process. The insurer's right to suspend payment shall further continue beyond the UR process to a proceeding before a Workers' Compensation judge, unless there is a UR determination made at reconsideration that the treatment is reasonable or necessary.

(f) If a URO determines that medical treatment is reasonable or necessary, at reconsideration, the insurer shall pay for the treatment. Filing a petition for review before a Workers' Compensation judge, does not further suspend the obligation to pay for the treatment once there has been a determination at reconsideration that the treatment is reasonable or necessary. If it is finally determined that the treatment was not reasonable or necessary, and the insurer paid for the treatment in accordance with this chapter, the insurer may seek reimbursement from the Supersedeas Fund under section 443(a) of the act (77 P.S. § 999).

The Utilization Review (UR) provisions of Subchapter C relating to medical treatment review provide in part as follows:

## § 127.401. Purpose—review of medical treatment.

(a) Section 306(f.1)(6) of the Act provides a utilization review (UR) process, intended as an impartial review of the reasonableness or necessity of medical treatment rendered to, or proposed for, work-related injuries and illnesses.

(b) UR is a three-step process, that may be requested by multiple parties:

1. The first-step is the initial request that may be made by, or on behalf of, the employer, insurer or employe.

2. The second-step is the request for reconsideration that may be made by, or on behalf of the employer, insurer, employe or health care provider.

3. The third-step is the petition for review of utilization review, that may be filed by, or on behalf of, the employer, insurer, employe or health care provider.

(c) Review of medical treatment shall be conducted only by those organizations authorized as utilization review organizations (UROs) by the Secretary, pursuant to the process set forth in § 127.650 through § 127.670.

## § 127.403. Assignment of cases to UROs.

The Bureau will randomly assign requests for UR to authorized UROs. An insurer's obligation to pay medical bills within 30 days of receipt shall be tolled only when a proper request for UR has been filed with the Bureau in accordance with the provisions of this Subchapter.

## § 127.451. Initial requests for utilization review—who may file.

Initial requests for UR may be filed by an employe, employer or insurer. Health care providers may not file initial requests for UR.

## § 127.452. Initial requests for utilization review—filing and service.

(a) A party seeking UR of treatment rendered under the Act shall file the original and 8 copies of a form prescribed by the Bureau as an initial request for utilization review. All information required by the form must be provided. Where available, the filing party shall attach authorizations to release medical records of the providers listed on the request.

(b) The initial request for UR shall be served on all parties and their counsel (if known) and the proof of service on the form shall be executed. If the proof of service is not executed, the request for UR will be returned by the Bureau.

(c) Initial requests for UR shall be sent to the Bureau at the address listed on the form.

## § 127.453. Initial requests for utilization review—assignment by the Bureau.

(a) The Bureau will randomly assign a properly filed request for UR to a certified URO (Utilization Review Organization).

(b) The Bureau will send a notice of assignment of the request for UR to the URO; the employe; the employer or insurer; the health care provider under review, and the attorneys for the parties, if known.

## § 127.476. Duties of UROs—form and service of determinations.

(a) Each determination rendered by a URO on the merits shall include a form prescribed by the Bureau as a medical treatment review determination face sheet and the reviewer's report. The face sheet shall be signed by an authorized representative of the URO.

(b) When a determination is rendered against the provider under review on the basis that no records were supplied by the provider, the determination shall consist only of the face sheet. However, in such cases, the face sheet shall clearly indicate that the basis for the decision is the failure of the provider under review to supply records to the URO.

(c) The URO's determination, consisting of both the face sheet and the reviewer's report, shall be served on the employe, the insurer or employer, the provider under review, the attorneys for the parties (if known), and the Bureau.

(d) The URO shall also serve a copy of a form prescribed by the Bureau for filing requests for reconsideration on all parties and their attorneys (if known).

## § 127.501. Reconsideration of initial utilization review determinations—who may file.

If the provider under review, the employe, the employer or the insurer disagrees with the initial UR determination rendered, a request for reconsideration may be filed with the Bureau.

## § 127.502. Reconsideration—time for filing.

Within 30 days of receipt of the initial UR determination the party requesting reconsideration shall file with the Bureau the original and 8 copies of the form prescribed by the Bureau as a request for reconsideration. Requests for reconsideration shall be sent to the Bureau at the address listed on the form.

## § 127.503. Reconsideration—service.

(a) The request for reconsideration shall be served on all parties and their attorneys (if known). The proof of service on the request for reconsideration shall be executed.

## § 127.509. Assignment of reconsideration to reviewer by URO.

(a) The URO shall forward the medical records used for the initial UR, together with any additional records supplied by the provider under review, to a reviewer other than the reviewer who performed the initial UR. The reviewer performing the reconsideration shall be licensed by the Commonwealth of Pennsylvania in the same profession and Board-certified in the specialty or sub-specialty of the provider under review. In the case of physicians, Board-certification shall be by an accredited specialty board.

## § 127.512. Reconsideration—form and service of determination.

(a) The determination by a URO on a reconsideration shall be in the form prescribed by § 127.476 (relating to form and services of determinations).

(b) The determination by a URO on a reconsideration shall be served in accordance with the requirements prescribed by § 127.476 (relating to form and service of determinations).

## § 127.551. Petition for Review by Bureau of utilization review determination.

If the provider under review, the employe, the employer or the insurer disagrees with the determination rendered on reconsideration, a request for review by

the Bureau may be filed on a form prescribed by the Bureau as a petition for review of a utilization review determination.

**§ 127.556. Petition for Review by Bureau—*de novo* hearings.**

The hearing before the Workers' Compensation Judge shall be a *de novo* proceeding. The Workers' Compensation Judge shall not be bound by any prior determinations made during the UR process.

Based substantially upon the above referenced law and regulations (and arguably some not set forth above); the deposition testimony of David R. Weyl, Chief of the Medical Cost Containment Division, Bureau of Workers' Compensation, Department of Labor and Industry, Commonwealth of Pennsylvania; Laura S. Keller, manager of the medical treatment, review section for the Bureau of Workers' Compensation; Carl M. Lorine, a current Workers' Compensation Judge; and Cheryl M. Lapotin, Workers' Compensation claims manager for the School District of Philadelphia, plaintiffs contend that both the defendant private insurers and the defendant school district, acting through its third party administrator, are acting jointly with the state when they "unilaterally terminate medical benefits pursuant to the utilization review." (Pls.' Br. at 18).

## II. DISCUSSION

The question presented in connection with defendants' motions to dismiss and plaintiffs' motion for partial summary judgment is: Are the private insurer defendants and school district defendants state actors?[1]

In *Mark v. Borough of Hatboro*, 51 F.3d 1137 (3d Cir.1995), the court reiterated the Supreme Court's pronouncement that in cases under § 1983, such as this case, "under color" of law is treated as the same thing as the "state action" requirement of the Fourteenth Amendment. *Mark*, 51 F.3d at 1141 *citing United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966) (quoted in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982) ... and *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982)). The court went on to recite the three discrete tests to determine whether there has been state action. They are:

(1) Does the private entity exercise powers that are traditionally the exclusive prerogative of the state.

(2) Has the private entity acted with the help of or in concert with state officials.

(3) Has the state so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity (sometimes referred to as the symbiotic relationship test). *Mark*, 51 F.3d at 1142–1143 (citations omitted).

### A. Private Insurer Defendants.

Plaintiffs contend that the relationship between the state and the private insurer defendants in utilization review ("UR") is "so interstitial as to render the defendants state actors for purposes of the Fourteenth Amendment when they involve utilization review and cease, or supersede, medical benefits to claimants on that basis." (Pls.' Br. at 2–3).

The facts upon which plaintiffs seem to rely to justify the above conclusion are the following:

### 1. The historical roots of the Workers' Compensation Act, and the system it created.

It is mandatory under the act that employers provide workers' compensation for their employees. In exchange, the employee is required to relinquish his right to sue his

---

1. Since defendants' motions contested factual allegations in the plaintiffs' complaint and appeared to rely upon facts outside the complaint, plaintiffs moved the court to permit them to take a limited amount of discovery prior to answering the motions and to convert the motions to dismiss to motions for summary judgment. The court permitted plaintiffs a period of forty-five (45) days to conduct discovery on the issue of state action. The discovery period was subsequently extended to July 14, 1995. Oral argument on the motions was held on December 13, 1995.

employer in tort. While the employee has the right to have insurance coverage at no cost, he has no right to opt out of the workers' compensation system in favor of his own private insurance coverage or none at all.

## 2. The operation of the Workers' Compensation System.

The Bureau of Workers' Compensation of the Pennsylvania Department of Labor and Industry (hereafter "Bureau"), is the administrator of the Workers' Compensation Act and has adopted its own rules and regulations by which it actively enforces the Act and ensures compliance with it. The Bureau has adopted forms to be used for various reporting requirements included in the Act.

## 3. Bureau's specific role in the utilization review process under 77 P.S. § 531(5) and regulations.

"The Bureau serves the dual function of gate keeper and traffic cop" (Pls.' Br. at 12) in that access to the utilization review system can only be gained by filing the Bureau's form. Once that form has been completed properly and submitted in timely fashion, an insurer may stop payments for medical treatment. In order for its obligation to pay medical bills to be tolled, the insurer must submit a proper request for UR within 30 days of receipt of the medical bills. The propriety of the request as initially determined by the Bureau is based solely upon formal issues regarding the Bureau's form and involves no consideration of the merits of the request. If the formal requirements of the form are met, the Bureau then assigns the case to a Utilization Review Organization ("URO"). When the URO completes its report, it must file a copy of it with the Bureau. Any party—that is, employer, insurer, provider or employe—may file for reconsideration, after which filing the Bureau assigns the case to a URO for review. The URO performing this reconsideration review must file a copy of its report with the Bureau.

Any party aggrieved by the reconsideration review may file a petition for review with the Bureau, which assigns it to a Workers' Compensation judge, who considers the matter *de novo*. While the employe cannot participate in either the initial UR or the reconsideration review, he can participate fully in the *de novo* proceeding before the Workers' Compensation judge.

Essentially, plaintiffs argue that insurer defendants are state actors when they request a UR because (1) the state has created the workers' compensation system which is administered by the Bureau; (2) the insurer can only access the system by the use of official forms prepared by the state through the Bureau; and (3) the insurers will not be permitted to toll payments of medical benefits unless the forms they file comply with the Bureau's procedural provisions and "substantive criteria" permitted by statute or regulations.[2]

The insurer defendants argue that contrary to being state actors, they are private entities who independently make a decision whether to request utilization review. Once they decide to seek UR, the statute "is self-executing, meaning that the obligation to make payment is determined solely by whether or not there has been a request by the employer or insurer for utilization review." (Defs.' Mem at 2). Because the decision to seek UR is made independently, insurer defendants argue, "the determination of whether or not there is a payment obligation does not depend on the actions of any public agency or official." (*Id.*)

Before embarking on an evaluation of the specific facts of the present case, I feel it is important to note the basic constitutional principles relevant to the discussion of this case. As the Supreme Court stated in *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991):

> One great object of the Constitution is to permit citizens to structure their private relations as they choose subject only to the constraints of statutory or decisional law.
>
> To implement these principles, courts must consider from time to time where the governmental sphere ends and the private sphere begins. Although the conduct of

---

**2.** For a discussion of whether the criteria examined by the Bureau are in fact "substantive" or merely procedural, see this opinion, *infra* at 904, 905.

private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints. This is the jurisprudence of state action, which explores the "essential dichotomy" between the private sphere and the public sphere, with all its attendant constitutional obligations.

*Edmonson,* 500 U.S. at 619–620, 111 S.Ct. at 2083 (citations omitted). It is with these considerations in mind that I proceed with the following analysis.

In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court set forth the test now relied upon in evaluating state action questions under Section 1983. That framework is utilized and effectively explained by the court in the more recent case of *Edmonson v. Leesville Concrete.* Since this analytical framework appears to have been taken up by the Third Circuit, *see, e.g., Mark,* 51 F.3d 1137, I have attempted to follow what I will call the *Edmonson/Lugar* test in answering the question presented here.

■ The *Edmonson/Lugar* test consists of two basic questions:

(1) Has the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority; and

(2) Can the private entity charged with the deprivation be described in all fairness as a state actor.

*Edmonson,* 500 U.S. at 620, 111 S.Ct. at 2082 and 2083.

■ In *Lugar,* the first of the two basic questions was answered the same way as the question should be answered in this case; namely, the procedural scheme created by the statute obviously is the product of state government and the statute has its source in state authority. However, both *Lugar* and *Edmonson* make it clear that this is only the beginning of the inquiry.

The second question, involves an examination of the following fact-based elements:

(1) The extent to which the private entity relies on governmental assistance and benefits;

(2) Whether the private entity is performing a traditional government function; and

(3) Whether the injury caused is aggravated in a unique way by the incidents of governmental authority.

*Edmonson,* 500 U.S. at 621–622, 111 S.Ct. at 2083 *citing Lugar,* 457 U.S. at 937–942, 102 S.Ct. at 2754–2756.

In connection with the first element of the second question, the Court in *Edmonson* instructed that private use of state-sanctioned private remedies alone does not rise to state action unless private parties make extensive use of state procedures with the "overt, significant assistance of state officials." *Edmonson,* 500 U.S. at 620–622, 111 S.Ct. at 2083–2084, (*quoting Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 485, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988) (additional citations omitted)). *Lugar* and *Edmonson* provide examples of overt, significant assistance of state officials. *See also Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

In *Lugar,* the prejudgment attachment procedure required only that the plaintiff allege in an *ex parte* petition that defendant was disposing of his property (or might dispose of it) to defeat his creditors. Upon receiving this petition, the clerk in the state court would issue a writ of attachment which was then executed by the Sheriff. Although the property was left in defendant's possession, the execution of the writ of attachment by the Sheriff effectively sequestered it. Thus, in *Lugar,* and earlier in *Sniadach,* the court held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize the private party, in all fairness, a "state actor" for purposes of the Fourteenth Amendment.

However, *Lugar,* upon which plaintiffs rely substantially, seems to be limited to the context of prejudgment attachment. *Lugar,* 457 U.S. at 939, n. 21, 102 S.Ct. at 2755, n. 21.

As noted by the Court in *Lugar*, the question of whether a private entity in all fairness can be described as a state actor is a "fact bound" one, and so the ruling in one case may not necessarily be extrapolated to another case's fact pattern.

The *Edmonson* case decided that a private litigant in a civil case who uses peremptory challenges to exclude jurors on account of race, has to in all fairness be deemed a government actor.

In summarizing the extent to which a private party relied on government assistance, the Court in *Edmonson* carefully analyzed the facts of the case and the functions of the private and state participants in the jury selection process, stating:

> As we have outlined here, a private party could not exercise its peremptory challenges absent the overt, significant assistance of the court. The government summons jurors, constrains their freedom of movement, and subjects them to public scrutiny and examination. The party who exercises a challenge invokes the formal authority of the court, which must discharge the prospective juror, thus effecting the "final and practical denial" of the excluded individual's opportunity to serve on the petit jury. *Virginia v. Rives*, 100 U.S. 313, 322, 25 L.Ed. 667 (1880). Without the direct and indispensable participation of the judge, who beyond all question is a state actor, the peremptory challenge system would serve no purpose. By enforcing a discriminatory peremptory challenge, the court "has not only made itself a party to the [biased act], but has elected to place its power, property and prestige behind the [alleged] discrimination." *Burton v. Wilmington Parking Authority*, 365 U.S. [715] at 725, 81 S.Ct. [856] at 862 [6 L.Ed.2d 45] [1961]. In so doing, the government has "create[d] the legal framework governing the [challenged] conduct," *National Collegiate Athletic Assn.*, 488 U.S. [179] at 192, 109 S.Ct. [454] at 462 [102 L.Ed.2d 469 (1988) ], and in a significant way has involved itself with invidious discrimination.

*Edmonson*, 500 U.S. at 624, 111 S.Ct. at 2084–2085. In addition, *Edmonson* then considered the other two factors in deciding whether a private entity in all fairness can be described as a state actor, and concluded that the action in question involved a traditional government function (selection of a jury) and was aggravated in a unique way because the government permits the discrimination to occur within the courthouse.

The above cases, involving joint participation with state officials in the seizure of property and the private litigants' use of peremptory challenges to exclude jurors on account of race, are examples of governmental assistance and benefits which have been sufficiently extensive to support an ultimate finding of "state actor" according to the test outlined in *Edmonson*.

Into the above category also must fall a case arising from this district which cannot be overlooked because it deals with a challenge to a past method by which an employer or insurer obligated to pay benefits under the Pennsylvania Workers' Compensation Act could cease paying those benefits: *Baksalary v. Smith*, 579 F.Supp. 218 (1984).

The section of the Act involved in *Baksalary* provided, in part:

> The filing of a petition to terminate or modify a notice of compensation payable or a compensation agreement or award as provided in this section shall operate as a supersedeas, and shall suspend the payment of compensation fixed in the agreement or by the award, in whole or to such extent as the facts alleged in the petition would, if proved, require only when such petition alleges that the employe has returned to work at his prior or increased earnings or where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the [Bureau of Worker's Compensation] to that effect which is based upon an examination made within fifteen days of the filing of the petition.

77 P.S. § 774 (1992).

The rationale of the *Baksalary* court with regard to the state actor issue of private insurers can best be summed up by the following:

The Supreme Court has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756. "[I]n this context 'joint participation' [does not require] something more than invoking the aid of state officials to take advantage of state created attachment procedures." 457 U.S. at 942, 102 S.Ct. at 2756.

Section 413's automatic supersedeas procedure requires a filing with the Bureau of Worker's Compensation. This filing is sufficient to constitute "joint participation" and to subject private invocation of the automatic supersedeas to the due process clause.

*Baksalary*, 579 F.Supp. at 231, 232.

Cases finding no state action since *Baksalary* are numerous and, of course, "fact driven." *Mark*, 51 F.3d 1137, although it found state action, is significant to my decision in this case for at least two reasons. First, the court explained that in *Edmonson*, the Supreme Court clarified the *Lugar* joint participation test in part by describing in more detail the second prong of that test. This more detailed explanation in *Edmonson* came well after the *Baksalary* decision. Second, *Mark* involved the question as to whether the Borough and Enterprise Fire Company, a volunteer fire company, could be liable under § 1983 for damages resulting from arson committed by a member of that company. The facts which supported state action show how governmental authority can so dominate an activity that its participants must be considered state actors.

The *Mark* court initially concluded in analyzing the second factor of the *Edmonson/Lugar* criteria that the fire company did provide services which are a traditional government function. It also undertook an analysis as to the extent to which the fire company relied upon government assistance and benefits (the first *Edmonson/Lugar* factor, 500 U.S. at 620, 111 S.Ct. at 2082). It noted that numerous legislative enactments interweave the functioning of government and the fire company. Also in this particular case,

the fire company had an agreement with the Borough whereby the Borough agreed to provide sufficient funds for its operation and capital expenditures by imposition of a fire tax. The fire company was designated as "the duly appointed fire company to service the Borough of Hatboro." The fire chief was required to attend meetings of the Borough council. *Mark*, 51 F.3d at 1147.

While not using the terminology of the third *Edmonson/Lugar* factor, the court in *Mark* did explain that the alleged wrongful act (the method of electing firefighters) was directly related to the state created duty to provide fire protection in the first place. By way of contrast, the facts in a series of cases not finding state action follow.

In *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir.1994), the court found that the entry of judgment by confession did not involve state action. The court agreed with the district court that "a state procedure permitting private parties to file a complaint and confess judgment essentially involves acquiescence by the state, not compulsion. In such circumstances, private conduct is not attributable to the state." *Jordan*, 20 F.3d at 1266. Similarly, defendant insurers feel that what they do in making an independent decision to withhold payment of medical benefits and thereafter file the appropriate form "essentially involves acquiescence by the state, not compulsion."

I should note that in *Jordan*, which followed *Lugar*, the court found that when a judgment creditor uses Pennsylvania procedure for executing on a conferred judgment, he becomes a state actor. It seems clear in the line of cases dealing with confessed judgments and procedures for collection that a distinction is made between what is or is not a significant contribution by the state to the constitutional deprivation; that is, has the state by statute authorized its own officers to invoke the force of law in aid of a private person's request. *See also Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (in which state action found because executrix not authorized to act until appointed by court under Oklahoma probate code).

Three cases since *Baksalary* seem to suggest by their ultimate conclusion that state statutes similar to the one in this case do not authorize its officers to invoke the force of law in aid of a private person's request: *Barnes v. Lehman,* 861 F.2d 1383 (5th Cir. 1988); *Grenz v. EBI/Orion Group, Inc.,* 968 F.2d 1220 (9th Cir.1992); and *Fleming v. Workers' Compensation Commission,* 878 F.Supp. 852 (E.D.Va.1995).

In *Barnes,* in which a worker's benefits could be stopped, by statute, based on a doctor's medical opinion, the plaintiff argued that the insurers invoked the aid of state officials when filing the forms incident to ceasing payment. But the *Barnes* court held: "Regulations that dictate procedures, forms or even penalties without dictating the challenged action do not convert private action into state action. The decision to adopt Dr. Lehman's opinion as final and to cease Barnes' benefits was a decision initiated by the insurer and not the state." *Barnes,* 861 F.2d at 1387.

The *Barnes* court, in commenting on *Lugar,* found that prejudgment attachment cannot be equated to a summary termination of compensation benefits without an adjudication or administrative hearing. The court went on to cite *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) for the proposition that the "total absence of overt official involvement plainly distinguishes" the actions of private entities pursuant to a self help provision of the New York Commercial Code from actions of creditors acting jointly with state officers pursuant to prejudgment attachment procedures. *Barnes,* 861 F.2d at 1387 (*citing Flagg Bros.,* 436 U.S. at 157, 98 S.Ct. at 1733).

In *Grenz,* the plaintiff argued that the state of Montana and the insurers are joint participants in the workers' compensation scheme because the state mandates workers' compensation, certifies and regulates workers' compensation insurance companies, and provides workers' compensation directly to a significant number of workers. The state itself, however, apparently has nothing to do with the panel of physicians who examine plaintiff pursuant to Montana law to determine whether he is still eligible for benefits or what the insurer does thereafter based on its findings. The Montana law does require the plaintiff to submit to the examination by the panel. If the insurer does alter the benefits, the worker may challenge the change in the Montana Workers' Compensation Court. The analysis in *Grenz* is brief. Citing *Edmonson,* the court concludes that the insurers were not state actors, even though benefits are altered or terminated prior to a hearing.

*Fleming* involved a Virginia statute. In that state an employee's right to compensation ceases upon her unjustified refusal to accept suitable employment. To implement this statute, the commission rules permit an insurer to suspend or modify compensation pending acceptance or rejection of an employer's application filed to allege such unjustified refusal. The court stated "USF & G is authorized, but not required, to suspend benefits. And, while the Commonwealth authorizes the challenged action, it does not dictate it. In the final analysis, the ultimate decision whether to suspend benefits rests with the insurer." *Fleming,* 878 F.Supp. at 861.

It seems clear that the later three cases decided since *Baksalary* have found the action of the private insurers in connection with state workers' compensation laws to be more analogous to the private creditor seeking judgment than to the private creditor seeking execution upon a judgment. The former involves mere acquiescence while the latter, overt state assistance. Plaintiffs suggest throughout their brief that the Bureau reviews requests for UR both for substantive and procedural compliance with the statute. The difference between the two is not clear in the context of plaintiffs' argument. One thing is clear and that is that the Bureau makes no determination as to whether the medical costs are reasonable or necessary. That, it seems to me, is the substantive matter involved in a request for UR.

In coming to the ultimate decision in this case, I find some comfort in the reference made by the court in *Groman v. Township of Manalapan,* 47 F.3d 628, 639 (3d Cir.1995) as follows:

We note initially that, as one commentator has observed: Imposing categories and labels on the court's different approaches to state action issues is somewhat arbitrary and potentially misleading. The court seldom describes its decisions as creating a structure of discrete state action theories. Rather, the court's decisions follow the more traditional judicial style of deciding each case based on the facts of the case, guided by similarly fact-specific decisions of the past. In addition, the court uses different phrases to refer to the same or similar theories.... Nonetheless, the court's state action decisions do create some clearly distinguishable approaches to the state action issue. Henry C. Strickland, *The State Action Doctrine and the Rehnquist Court*, 18 Hastings Const. L.Q. 587, 596–97 (1991) (citations omitted).

My analysis of one of the objects of the Constitution stated in *Edmonson,* the relevant case law and the development and refinement of it since *Baksalary,* leads me to conclude that the insurers in this case are not state actors, primarily because the decision to cease paying medical benefits is entirely up to the insurer acting independent of any state involvement whatsoever. The state takes no substantive step to promote, support or encourage the decision of the insurer; and after the decision is made, the state takes no action which influences the ultimate substantive determination as to whether benefits are payable or not. The state does not significantly assist private actors when it merely provides a remedy, albeit complete with authorized forms and regulations. The state's acceptance and routing of forms completed in accordance with its instructions, in essence, it seems to me, involves acquiescence and not compulsion on the part of the state.

**B. School District Defendant.**

■ As to the school district's motion to dismiss, the mere fact that it has obtained the services of a third party administrator to provide medical claims management service does not necessarily relieve it of responsibility for constitutional violations of that third party. (We are assuming, without having decided, that the third party administrators' use of UR violates plaintiffs' constitutional rights.) In this case, the school board has elected to fulfill its medical benefit obligations on its own rather than to secure an insurance carrier. To what extent the practices and policies of the school board both with regard to payment of medical benefits and to the role of the third party administrator in the determination thereof play a part in bringing about the challenged activity (request for UR) is not sufficiently clear for me to find as a matter of law in the school board's favor.

While the school district argues otherwise, I cannot determine on the present state of the record if it has promulgated any policy or custom, or coerced or exerted significant pressure on the third party administrator so as to compel the challenged activity. For example, the preliminary request for proposal for the claims management service devotes a section to interaction with school officials, including a monthly review of serious cases with staff from the school district. Does this involve any policy or custom? By the same token, I cannot grant plaintiffs' motion for summary judgment as to the state action issue. More discovery is needed relative to practices and policies of the school board.